RENDERED: SEPTEMBER 27, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky



2018-SC-000092-DGE

DATE 10/18/18 Kim Redmon, DC

CABINET FOR HEALTH AND FAMILY
SERVICES, COMMONWEALTH OF
KENTUCKY ON BEHALF OF THE MINOR
CHILD C.R.

APPELLANT

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2017-CA-001011-MR
V.      CLARK CIRCUIT COURT NO. 16-J-00350-001

C.B.

APPELLEE

## OPINION OF THE COURT BY JUSTICE KELLER

### REVERSING

The Clark Circuit Court found C.B.'s[1] daughter to be a neglected child pursuant to the Kentucky Unified Juvenile Code. C.B. appealed and the Court of Appeals reversed. The Cabinet for Health and Family Services (Cabinet) petitioned this Court for discretionary review, which we granted. After our

---

[1] Due to the confidential nature of dependency, neglect, and abuse proceedings in family court, the parties will be identified by initials.

review of the record and the law, we reverse the Court of Appeals and reinstate the orders of the Clark Circuit Court.

## I.    BACKGROUND

C.B. and Mother[2] lived together but were never married. Mother had a previous case plan with the Cabinet regarding another child, and C.B. had a previous involuntary termination of parental rights (TPR) case with the Cabinet, involving other children.

In late June 2016, C.B. began attending the suboxone clinic, Beall Recovery. C.B.'s intake form at the clinic indicated that he admitted to using heroin, Percocet, and off-street suboxone. Mother also had a history of substance abuse problems. Child was born on August 5, 2016. Child tested positive for suboxone, had low oxygen intake, mild retractions and hip dysplasia.

Also, in August 2016, social worker Roberta Mardis (Roberta) received a new investigation request relating to Child being born, positive for suboxone, referencing C.B.'s and Mother's previous histories with the Cabinet and substance abuse. C.B. and Mother agreed to the Cabinet's Prevention Plan (case plan). Child was placed in the care of the maternal grandmother, C.R. C.R. was to supervise C.B.'s and Mother's contact with Child.

The case plan also required C.B. to call the Cabinet office three times per week for random drug tests. If required to test, C.B. would report to the office

---

[2] The Child's, Mother's, and maternal grandmother's initials are C.R. To avoid confusion in identifying the parties, we refer to these individuals as "Child," "Mother," and "C.R.," respectively.

2

during a designated time. C.B. was also required to continue attending Beall Recovery, follow all treatment recommendations and take all medications as prescribed, and to have only supervised contact with Child until further notice.

C.B. called the Cabinet office, as required, during the early stages of his case plan. At the adjudication hearing, however, the Commonwealth introduced drug tests showing that C.B. had tested positive for Gabapentin on three occasions. C.B. did not have a prescription for Gabapentin. C.B. also failed to call the Cabinet office for random testing on several occasions and even left the office prior to providing a testing sample on two occasions. C.B. also continued to test positive for suboxone, even though he was not currently receiving suboxone prescriptions.

The Cabinet filed a petition on November 29, 2016, seeking a finding that the Child was dependent, neglected, or abused. The case was set for an adjudication hearing on April 13, 2017. The Commonwealth requested, and the court granted, that Mother's case be adjusted and continued for two months. The Commonwealth indicated its intention to dismiss the case against Mother so long as Mother continued to follow and make progress on her case plan.

The above evidence was presented at the adjudication hearing. Roberta also testified regarding C.B.'s prior TPR proceeding. C.B. testified that he had never taken the drug Gabapentin and that he was willing to do a hair follicle test to show he had never taken the drug. There were also drug screens presented from Beall Recovery that did not show the presence of Gabapentin.

3

These drug screens were taken on consecutive days to those from the Cabinet showing the presence of Gabapentin. In regard to the positive suboxone tests, C.B. indicated that he had "stretched" out his prescription to keep from getting sick. C.B. began working two jobs and did not think he would be able to see the doctor for a couple of months, so he had not been using suboxone according to his prescription in order to make it last longer.

C.B. also testified about the TPR proceeding. He stated that the children from that case were not his biological children. The trial judge reviewed the TPR file finding that C.B. had held himself out as the father and made no objection in the case about not being the father. The trial judge indicated that his rights were terminated in that case because of his history of substance abuse.

In the instant case, the trial judge found that the petition was proven by a preponderance of the evidence. Child was found to be a neglected child due to the risk of harm associated with C.B.'s substance abuse issues.

C.B. appealed and the Court of Appeals reversed. Not only did the Court of Appeals find that the Cabinet's evidence was speculative and did not rise to the preponderance level, but the Court of Appeals also found that the Child could not be found to be neglected because C.B. had never exercised custodial control or supervision over the Child. This Court granted the Cabinet's motion for discretionary review. We now reverse the Court of Appeals.

## II. ANALYSIS

### A. Statutory Interpretation.

This case primarily presents us with the task of interpreting Kentucky Revised Statute (KRS) 600.020. Statutory interpretation is an issue of law which we review *de novo*. *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007) (citing *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998)).

> In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes.

*Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) (internal citations omitted).

> (1) "Abused or neglected child" means a child whose health or welfare is harmed or threatened with harm when:
>
> > **(a) His or her parent, guardian, person in a position of authority or special trust, as defined in KRS 532.045, or other person exercising custodial control or supervision of the child:**
> >
> > > 1. Inflicts or allows to be inflicted upon the child physical or emotional injury as defined in this section by other than accidental means;
> > >
> > > 2. Creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means;

3. Engages in a pattern of conduct that renders the parent incapable of caring for the immediate and ongoing needs of the child including, but not limited to, parental incapacity due to alcohol and other drug abuse as defined in KRS 222.005;

4. Continuously or repeatedly fails or refuses to provide essential parental care and protection for the child, considering the age of the child;

5. Commits or allows to be committed an act of sexual abuse, sexual exploitation, or prostitution upon the child;

6. Creates or allows to be created a risk that an act of sexual abuse, sexual exploitation, or prostitution will be committed upon the child;

7. Abandons or exploits the child;

8. Does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being. A parent or other person exercising custodial control or supervision of the child legitimately practicing the person's religious beliefs shall not be considered a negligent parent solely because of failure to provide specified medical treatment for a child for that reason alone. This exception shall not preclude a court from ordering necessary medical services for a child;

9. Fails to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining in foster care for fifteen (15) of the most recent twenty-two (22) months; or

(b) A person twenty-one (21) years of age or older commits or allows to be committed an act of sexual

> abuse, sexual exploitation, or prostitution upon a
> child less than sixteen (16) years of age;

KRS 600.020(1) (emphasis added).

C.B. argued, and the Court of Appeals agreed, that the emphasized portion of the statute requires that an individual have custody or supervision of a child before a finding of abuse or neglect can be made. We disagree.

In the emphasized portion above, the phrase "exercising custodial control or supervision" modifies "other person." This makes sense based on the grammatical construction of the provision. First, the provision separates the enumerated relationships by an "or." "In common and natural usage the word 'or' is disjunctive and expresses an alternative as between either of two or more separate subjects or conditions and implies an election or choice as between them." *Board of Nat;l Missions of Presbyterial Church v. Harrel's Trustee*, 286 S.W.2d 905, 907 (Ky. 1956). It is therefore plain and apparent that the General Assembly intended to name multiple alternatives in the provision.

Second, this theory of interpretation is supported by the fact that the alternatives are all distinct classifications of relationships. KRS 600.020(46) defines parent as "the biological or adoptive mother or father of a child." "Guardianship gives a person 'the powers and responsibilities of a parent regarding the ward's support, care, and education[.]'" *Hicks v. Halsey*, 402 S.W.3d 79, 83 (Ky. App. 2013) (internal citations omitted).

> "Position of authority" means but is not limited to the position occupied by a biological parent, adoptive parent, stepparent, foster parent, relative, household member, adult youth leader, recreational staff, or volunteer who is an adult, adult athletic manager, adult coach, teacher, classified school employee, certified school

employee, counselor, staff, or volunteer for either a residential treatment facility or a detention facility as defined in KRS 520.010(4), staff or volunteer with a youth services organization, religious leader, health-care provider, or employer.

KRS 532.045(1)(a).

"'Position of special trust' means a position occupied by a person in a position of authority who by reason of that position is able to exercise undue influence over the minor." KRS 532.045(1)(b).

Despite these distinct definitions, the General Assembly added the clause "or other person exercising custodial control or supervision of the child." This makes logical sense as parents are separate and distinct due to their natural and *legal* obligation to provide care for their children. *Cashen v. Riney*, 40 S.W.2d 339, 341 (Ky. 1931) (emphasis added) ("It is the legal, as well as the natural, duty of parents not only to educate, maintain, and support their infant children, but also to shield and protect them from evil and injury.").

We further reject C.B.'s argument premised on our prior case law. In *Commonwealth, Cabinet for Health & Family Servs v. T.N.H.*, 302 S.W.3d 658, 659 (Ky. 2010), mother and child were both in the custody of the Cabinet after petitions for dependency and neglect had been filed. After the mother failed to comply with the Cabinet's case plan, the child was removed from mother's custody. Eventually the Cabinet filed a petition for involuntary termination of the mother's parental rights. *Id.* at 660. The mother's rights were terminated, but the Court of Appeals reversed, holding that the Cabinet failed to prove that the mother was incapable of rendering the appropriate care for the child in the future. *Id.* at 661.

8

On discretionary review before this Court, the mother claimed there was no evidence that the child was abused or neglected "because the child was committed to the Cabinet this whole time and all of his emotional, supervisory and material needs were met by the Cabinet through the maternal aunt or foster parents, who were the ones exercising custodial control and supervision[.]" *Id.* at 662. This Court rejected the argument. "Just because the child, and the parent for that matter, are committed to the Cabinet does not mean that the parent has no further responsibilities to the child." *Id.* "The Cabinet developed a case plan," and "continually offered services." *Id.* Nevertheless, mother neglected her duties and failed to complete the goals set by the Cabinet. *Id.* This case is directly analogous to C.B.'s circumstances.

This Court is satisfied that the General Assembly drafted KRS 600.020(1)(a) with the intention that "exercising custodial control or supervision" modifies "other person." Grammatical construction, logic, and our prior case law support the statutory interpretation that a parent does not have to be exercising control or supervision in order to be found to have neglected or abused a child.

## B. Substantial Evidence Supported the Lower Court's Finding of Neglect.

A trial court has broad discretion in its determination of whether a child is dependent, neglected, or abused. *Dep't for Human Res. v. Moore*, 552 S.W.2d 672, 675 (Ky. App. 1977). "The adjudication shall determine the truth or falsity of the allegations in the complaint. The burden of proof shall be upon

9

the complainant, and a determination of dependency, neglect, and abuse shall be made by a preponderance of the evidence. The Kentucky Rules of Civil Procedure shall apply." KRS 620.100(3).

A "trial court's findings regarding the weight and credibility of the evidence shall not be set aside unless clearly erroneous." Kentucky Rule of Civil Procedure (CR) 52.01. "Under this standard, an appellate court is obligated to give a great deal of deference to the trial court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *D.G.R. v. Commonwealth, Cabinet for Health & Family Servs,* 364 S.W.3d 106, 113 (Ky. 2012) (citations omitted). Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chem. Co.,* 474 S.W.2d 367, 369 (Ky. 1971).

Furthermore, KRS 620.023 states:

(1) Evidence of the following circumstances if relevant shall be considered by the court in all proceedings conducted pursuant to KRS Chapter 620 in which the court is required to render decisions in the best interest of the child:

. . .

(b) Acts of abuse or neglect as defined in KRS 600.020 toward any child;

(c) Alcohol and other drug abuse, as defined in KRS 222.005, that results in an incapacity by the parent or caretaker to provide essential care and protection for the child;

. . .

10

The Cabinet was required to investigate the instant case due to the Child being born with drugs in her system.[3]

The purpose of the dependency, neglect, and abuse statutes is to provide for the health, safety, and overall wellbeing of the child. KRS 620.010. Based on our review of the evidence, the family court's findings are supported by the record and its ultimate finding of neglect is sound.

Evidence was presented that C.B. initially complied with the drug testing requirements of his case plan. C.B. appeared for testing multiple times per week. Evidence was presented that C.B.'s suboxone levels became inconsistent with the dosage of suboxone C.B. was supposed to be consuming. C.B. admitted that he had "stretched" his suboxone prescription because he did not know if he could see a doctor due to his new employment. Although inconsistent with the Beall Recovery Center drug tests, the Cabinet's drug tests also showed the presence of Gabapentin, a drug that C.B. had not been prescribed. Even though C.B. presented evidence and explanation of his own, all of this evidence was properly submitted before the trial judge, and the trial

---

[3] (4) The Cabinet. . .

(b) shall investigate or conduct an assessment upon receipt of a report that alleges neglect of a child perpetrated by a caretaker that may result in harm to the health and safety of a child in the following areas:

. . .

(8) At risk of harm due to an act described at KRS 600.020(1), if a child is:
(a) Born exposed to drugs or alcohol, as documented by a health care provider pursuant to:
(i) 42 U.S.C. 5106a(b)(2)(B)(ii); and
(ii) KRS 620.030(2).

922 KAR 1:330(4)(b)(8)(a)(i) and (ii).

judge was certainly permitted to find the Cabinet's evidence more credible or persuasive.

C.B. argues that the family court erred in relying on evidence of his seven-year old TPR proceeding. For several reasons, we find no error. First, it must be stated that in order for a trial judge to terminate an individual's parental rights, in an involuntary proceeding, one of the prerequisites to termination is that the trial judge find that the child has been abused or neglected.[4] So in C.B.'s prior TPR proceeding, the judge had to have found C.B.'s putative children[5] to be abused or neglected. This is significant because, as stated above, KRS 620.023 indicates that acts of abuse or neglect against *any child* are relevant in *any proceeding* pursuant to KRS Chapter 620, and the trial court *shall* consider such circumstances.

Second, the same statute mandates the trial judge to consider whether alcohol or drug abuse incapacitates a parent to the point of affecting the care of the child. KRS 620.023(1)(c).

---

[4](1) The Circuit Court may involuntarily terminate all parental rights of a parent of a named child, if the Circuit Court finds from the pleadings and by clear and convincing evidence that:

    (a) 1. The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction;

    2. The child is found to be an abused or neglected child, as defined in KRS 600.020(1), by the Circuit Court in this proceeding; or

    3. The parent has been convicted of a criminal charge relating to the physical or sexual abuse or neglect of any child and that physical or sexual abuse, neglect, or emotional injury to the child named in the present termination action is likely to occur if the parental rights are not terminated. . . .

KRS 625.090(1)(a)(1),(2),(3).

[5]C.B. claimed that he was not the father of the four children involved in the TPR proceeding. However, the trial judge reviewed the file and determined that C.B. held himself out as the father and did not object to the proceedings against him on the basis of him not being the father.

12

(3) "Alcohol and other drug abuse" means a dysfunctional use of alcohol or other drugs or both, characterized by one (1) or more of the following patterns of use:
(a) The continued use despite knowledge of having a persistent or recurrent social, legal, occupational, psychological, or physical problem that is caused or exacerbated by use of alcohol or other drugs or both;
(b) Use in situations which are potentially physically hazardous;
. . .
(d) Use of alcohol or other drugs or both is accompanied by symptoms of physiological dependence, including pronounced withdrawal syndrome and tolerance of body tissues to alcohol or other drugs or both;

KRS 222.005(3)(a)(b)(d).

The trial judge indicated to C.B., that the "termination of parental rights happened because you had a significant long-term substance abuse history and you weren't doing what you needed to do to fix the issue back then."[6] "Even without that history, it is absolutely uncontested that you have a very recent substance abuse history."[7] C.B. checked into the Beall Recovery Center a little over a month before the Child was born. C.B. admitted to using heroin, Percocet, and off-street suboxone. At the adjudication hearing, C.B. further conceded that he had not been following his suboxone prescription. He indicated that he stretched out his suboxone prescription so he would not get sick.

This evidence and testimony clearly satisfies KRS 222.005. C.B.'s admitted drug use, occurring as far back as 2009 and the earlier TPR proceeding, certainly caused and exacerbated C.B.'s legal problems involving

---

[6] VR 4/13/17, 12:23:25-12:23:39 P.M.
[7] *Id.* at 12:23:45-12:23:54 P.M.

13

his children and/or putative children. KRS 222.005(3)(a). C.B.'s incorrect use of his suboxone prescription so he would not get sick, albeit for the stated purpose of maintaining employment, also tends to show C.B.'s continued dependency and fear of withdrawal symptoms. KRS 222.005(3)(c).

As stated in KRS 600.020(1)(a)(2), a court can find neglect if an individual "creates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means." "The statute, as written, permits the court's finding where a *risk of abuse* exists and *does not require actual abuse* prior to the child's removal from the home or limitation on the contact with an abusive parent." *Z.T. v. M.T.*, 258 S.W.3d 31, 36 (Ky. App. 2008) (emphasis added).

C.B.'s prior history of drug abuse was found to have created a risk of harm in the prior TPR proceeding. C.B.'s recent compliance with the Cabinet's case plan, followed by missed tests and positive tests, provide an inference that C.B.'s drug issues are still not resolved. While family courts are not left with unfettered discretion when it comes to restricting parents' rights to their children, the family court certainly does not have to wait for actual harm to occur before taking protective measures.[8] Based on the evidence and C.B.'s own admissions, it was reasonable for the family court to rely upon this evidence in finding neglect.

---

[8] This measure is granted to the family court, provided evidence of a risk of harm is proved by a preponderance of the evidence.

14

## III.  CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals and reinstate the orders of the Clark Circuit Court.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Brian Neal Thomas
Grant, Rose & Pumphrey

Erica Kemp
Clark County Attorney's Office


COUNSEL FOR APPELLEE:

Adam Meyer
Department of Public Advocacy

Dodd Douglas Dixon
Dixon & Juett