RENDERED: FEBRUARY 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0188-DGE

COMMONWEALTH OF KENTUCKY,                                    APPELLANTS
CABINET FOR HEALTH AND FAMILY
SERVICES, AND R.O., A MINOR CHILD


|  | ON REVIEW FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2023-CA-0897 |
|  | CALLOWAY CIRCUIT COURT NO. 22-J-00138-001 |


K.O. AND S.O.                                                        APPELLEES

## OPINION OF THE COURT BY JUSTICE KELLER

### REVERSING

The Calloway Circuit Court found K.O. ("Father") to have neglected his child, R.O. ("Child"), pursuant to the Kentucky Unified Juvenile Code. Father appealed, and the Court of Appeals reversed. We thereafter granted the Cabinet for Health and Family Services's ("Cabinet") petition for discretionary review. After our review of the record and the law, we reverse the Court of Appeals and reinstate the orders of the Calloway Circuit Court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

S.O. ("Mother") and Father are the biological parents of Child. Mother and Father divorced approximately six years prior to the events giving rise to

the instant action. Mother and Father had joint custody of Child with equal timesharing before the incident at issue occurred.

School Resource Officer ("SRO") Tim Fortner worked for Child's elementary school and routinely assisted in the school's morning drop-off routine by opening doors to parents' vehicles to help the children exit the vehicles and enter the school. On October 27, 2022, SRO Fortner opened the passenger-side door to Father's vehicle and smelled what he believed to be the odor of marijuana emanating from the vehicle. He also observed smoke on the driver's side of the vehicle. After Child exited the vehicle, SRO Fortner confronted Father, stating, "I know what this is. I know what you're smoking . . . . Don't bring this [expletive] back on school property." Father did not immediately deny SRO Fortner's allegation, but instead simply drove away. SRO Fortner would later testify that while he had the authority to issue a citation to Father, he did not do so because he did not have the equipment necessary to issue a citation.

At the time of this incident, Child was six years old. SRO Fortner was familiar with Child due to Child's frequent behavioral issues at school. When Child was having these issues, SRO Fortner would give him a break from class and allow Child to walk around the school with him.

Following the incident in the school drop-off line, SRO Fortner filed a JC-3 form[1] to inform the Cabinet of his concerns regarding Child. The Cabinet then brought a dependency, neglect, or abuse ("DNA") action against Father in the family court division of the Calloway Circuit Court. In turn, the family court ordered Father, Mother, and Child to each submit to drug tests.

On December 5, 2022, a Child Guard Exposure Test was performed on a hair sample from Child to determine whether Child had been exposed to any illicit drugs. Child tested positive for Native THC and its metabolite, carboxy-THC. On December 19, 2022, nail samples were collected from Mother and Father for their respective drug tests. Mother tested negative for any illicit drugs. Father tested positive for Carboxy-Delta-9-THC, D-methamphetamine, and oxycodone. Carboxy-Delta-9-THC is a metabolite of the illicit form of marijuana. D-methamphetamine and oxycodone are also both illegal substances without a valid prescription.

The family court then held an adjudicatory hearing on the Cabinet's DNA petition on March 29, 2023. At this hearing, the family court heard testimony from six witnesses: SRO Fortner, social worker Brittany Taylor, Cabinet expert witness Rosemarie Rios, defense expert witness Dr. Lewis Jackson, Mother, and Father.

---

[1] The JC-3 form is provided by the Justice and Public Safety Cabinet for a law enforcement officer's use when responding to a report of suspected child abuse. Kentucky Revised Statutes ("KRS") 209A.120(5).

In addition to providing testimony regarding the incident in the school drop-off line and his experience with Child's behavioral issues, SRO Fortner stated that he had smelled the odor of marijuana on Child's clothing multiple times prior to this incident. He testified that Child's teachers had also noticed the odor. While SRO Fortner did not personally contact Child's parents regarding this concern, he did inform the school's principal.

Brittany Taylor, the Cabinet investigator assigned to the case, testified that on October 28, 2022, she conducted an unplanned visit to Father's home. While the main door to the home was open, the screen door was closed. Taylor stated that she could smell what she believed to be marijuana coming from the home and also noticed Child sitting on a couch in the living room. However, when she knocked on the door, no one answered. Taylor left her card at the door before leaving Father's residence.

Father later called Taylor and scheduled a home visit for November 3, 2022. During this visit, Taylor did not detect any odor of marijuana. Father explained that he had not heard Taylor knock on her previous visit because he had been in the back portion of his home. Taylor asked Father to submit to a drug test, but Father declined. Father later testified that he declined the drug test out of panic due to his past incarceration, where if he could not produce a urine sample for a drug test within thirty-minutes, he would be sent to "the hole."

The remainder of Taylor's testimony concerning her investigation corroborated SRO Fortner's testimony. Taylor similarly found Child to have

behavioral issues and confirmed that Child's teachers had noticed the odor of marijuana on Child's clothes on multiple occasions prior to the incident in the school drop-off line. Mother's testimony, however, contradicted the accounts given by SRO Fortner and Taylor. Mother testified that she had never smelled marijuana on Child. Further, she stated that she never had any reason to believe that Father had been using marijuana while supervising Child.

The family court also considered the results of the drug tests that it had ordered for Mother, Father, and Child. Father testified, and it was not disputed, that he has a prescription for oxycodone due to a previous car accident, thereby justifying his positive test result for that substance. Rosemarie Rios, the expert witness for the Cabinet, provided further analysis of Father's other test results. According to Rios, Father's positive result for Carboxy-Delta-9-THC suggested that he had ingested the substance between four to six months before the nail sample was collected. Additionally, the concentration of Carboxy-Delta-9-THC in Father's system was so high that it had exceeded the testing limits of the laboratory. Father's positive test result for methamphetamine only indicated exposure to the substance. Rios clarified that while it was possible Father had ingested methamphetamine, the test results could only definitively confirm exposure, not ingestion.

Father and Dr. Lewis Jackson, the defense's expert witness, attempted to justify Father's positive test result for methamphetamine exposure by claiming that the result was due to Father's legal use of an over-the-counter medication. Dr. Jackson testified that methamphetamine exists in two forms: D-

5

methamphetamine and L-methamphetamine. D-methamphetamine is a Schedule II controlled substance, making it illegal to possess without a valid prescription. Dr. Jackson confirmed that none of Father's prescribed medications contained D-methamphetamine. Next, Dr. Jackson explained that L-methamphetamine is the active ingredient in certain over-the-counter medications, like a Vicks VapoInhaler.

Father testified that in the months leading up to the drug test, he had used a Vicks VapoInhaler to combat his nasal congestion. Dr. Jackson testified that use of a Vicks VapoInhaler could lead to a positive test result for L-methamphetamine. However, Rios testified that Father's drug test results differentiated between D-methamphetamine and L-methamphetamine, and that Father had only tested positive for D-methamphetamine, the illicit form of methamphetamine. Father was unable to offer any explanation for why his test result showed the presence of D-methamphetamine.

Rios also testified regarding Child's test positive results for Native THC and its metabolite, carboxy-THC. She explained that the results indicated that Child had been exposed to marijuana in his environment at some point during the three months prior to collection of the hair sample.

After an exhaustive analysis of each witness's statements and credibility, the family court found that Father had neglected Child pursuant to KRS

600.020(1)(a)(1), (2), (3), and (4)[2]. The family court's "Findings of Fact,

Conclusions of Law" stated in relevant part:

> [W]hile the child in this case appears to be appropriately fed, clothed, and attends school, the child has also been exposed to sufficient amounts of marijuana that the child not only tested positive for exposure to marijuana, but actually tested positive for ingestion of marijuana. The evidence establishes that the father was smoking marijuana in an enclosed vehicle with the child present.
>
> Further, the evidence establishes the child repeatedly smelled of marijuana when he was at school and that the child has behavioral problems at school. There was no evidence introduced to refute that the behavioral problems are from anything other than the child's exposure to and ingestion of drugs.
> . . .
> The evidence in this case does show the child has behavioral issues at school and that the child has ingested marijuana into his system. Therefore, the evidence establishes that the father has created a risk of physical injury as the child has had marijuana in his system while in father's care and control. Certainly, marijuana impairs a person's physical condition, otherwise, driving while intoxicated by marijuana would not be illegal.
>
> In addition, the Court finds that the father has engaged in a pattern of conduct that has rendered him incapable of caring for the immediate needs of the child. The father is using methamphetamine and uses marijuana on a regular basis. A person who is high from methamphetamine or marijuana is incapable of meeting the immediate needs of a 6-year-old child.
>
> [The child] already has a behavioral problem. He clearly is at risk of having his academics and mental health effected by his father's substance use problem. If the father did not have a substance problem, his marijuana test results would not have been off the charts and his son's drug test results would not have been mid to high range. Therefore, the Court finds by preponderance of the evidence that the father . . . neglected his child for the reasons stated above.

---

[2] The family court only made specific written findings regarding KRS 600.020(1), (2), and (3).

7

In the family court's subsequent disposition hearing order, it directed Mother to retain temporary custody of Child and granted Father visitation with Child at Mother's discretion. The family court stated that while its ultimate goal in this case was reunification, "[Father] needs to address his mental health and substance abuse issues before his child can safely return to his care."

Father appealed the family court's decision to the Court of Appeals, which reversed. The Court of Appeals held that the family court's decision was clearly erroneous, as the Cabinet had allegedly failed to present evidence that Father's exposure of marijuana to Child resulted in a risk of physical or emotional injury to Child. After thoroughly reviewing the record, the arguments of the parties, and the applicable law, we reverse the decision of the Court of Appeals, and reinstate the order of the Calloway Circuit Court.

## II.    ANALYSIS

On appeal, the Cabinet argues that the Court of Appeals was incorrect in holding that the family court's finding of neglect was clearly erroneous. The Cabinet puts forth various arguments to support its claim; however, we focus on its argument that Father subjected Child to a "risk of harm" when he exposed Child to marijuana and drove Child to school while under the influence of marijuana because we consider that argument to be meritorious.

In response to the Cabinet, Father raises two main arguments. First, Father claims it was necessary for the Cabinet to present expert witness testimony to prove that Child's exposure to marijuana created a risk of impairment to Child's physical condition. Second, Father argues that the family

8

court lacked substantial evidence to find that Father was driving with Child while under the influence of an illegal substance, as SRO Fortner did not definitively establish that Father was smoking the illicit form of marijuana during their confrontation in the school drop-off line. For the reasons outlined below, we agree with the Cabinet, and reject Father's arguments.

### a. Standard of Review.

In DNA actions, the trial court is afforded a great deal of discretion in determining whether the child in question was neglected or abused. *Cabinet for Health and Fam. Servs. v. R.S.*, 570 S.W.3d 538, 546 (Ky. 2018). A family court's findings of fact in a DNA action "shall not be set aside unless clearly erroneous." CR 52.01. A finding of fact is clearly erroneous if it is not supported by substantial evidence. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky. 2003). "[S]ubstantial evidence" is evidence that when "taken alone or in the light of all the evidence . . . has sufficient probative value to induce conviction in the mind of [a] reasonable [person]." *Id.* Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses," because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. *Id.* (citing CR 52.01).

In turn, if the family court's findings of fact are supported by substantial evidence, and it applied the correct law, its decision will not be disturbed absent an abuse of discretion. *M.C. v. Cabinet for Health & Fam. Servs.*, 614

9

S.W.3d 915, 921 (Ky. 2021). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *R.S.*, 570 S.W.3d at 546 (citing *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)).

### b. The Family Court's Finding of Neglect Was Not Clearly Erroneous.

The purpose of the DNA statutes is to provide for the health, safety, and overall well-being of the child. KRS 620.010. In order to find that a child has been neglected or abused, the family court need only conclude that the parent satisfied one of the grounds enumerated in KRS 600.020(1)(a). In the instant case, the family court found that Father had neglected Child under KRS 600.020(1)(a)(1), (2), (3), and (4). Because we hold that the family court's findings under KRS 600.020(1)(a)(2) were supported by substantial evidence, and therefore were not clearly erroneous, we hold that it is unnecessary to discuss the family court's findings under the other subsections.

KRS 600.020(1) defines an "[a]bused or neglected child" as "a child whose health or welfare is harmed or threatened with harm when":

> (a) His or her parent, guardian, person in a position of authority or special trust, as defined in KRS 532.045, or other person exercising custodial control or supervision of the child:
> > . . .
> > 2. Creates or allows to be created *a risk of physical or emotional injury* as defined in this section to the child by other than accidental means[.]

(Emphasis added). A "physical injury" is one that involves "substantial physical pain or any impairment of physical condition." KRS 600.020(49). An "emotional injury" is:

10

> [A]n injury to the mental or psychological capacity or emotional stability of a child as evidenced by a substantial and observable impairment in the child's ability to function within a normal range of performance and behavior with due regard to his or her age, development, culture, and environment as testified to by a qualified mental health professional[.]

KRS 600.020(26).

Under the plain language of KRS 600.020(1)(a)(2), a court may find neglect where there has been only a *risk* of physical or emotional injury. *Cabinet for Health & Fam. Servs. ex rel. C.R. v. C.B.*, 556 S.W.3d 568, 575 (Ky. 2018). The statute "*does not require actual abuse* prior to the child's removal from the home or limitation on the contact with an abusive parent." *Id.* However, "the risk of harm must be more than a mere theoretical possibility." *M.C.*, 614 S.W.3d at 923 (quoting *K.H. v. Cabinet for Health and Fam. Servs.*, 358 S.W.3d 29, 32 (Ky. App. 2011)). The risk to the child must be "an actual and reasonable potential for harm." *Id.*

A child may be considered at risk of a physical or emotional injury where his or her parents have substance abuse issues that impact the child's health and well-being. In *Cabinet for Health & Family Services ex rel. C.R. v. C.B.*, we upheld a family court's finding of neglect due to a risk of physical or emotional injury to the child. 556 S.W.3d at 576. There, the court's finding of a risk of harm to the child was based on evidence that the child had been exposed to illicit substances and evidence that the father had a history of prior substance abuse issues that remained unresolved. *Id.* In *C.B.*, the child's mother and father ("C.B.") had a history of drug use, causing their child to test positive for suboxone at birth. *Id.* at 570. After receiving notice of the child's test result, the

11

Cabinet placed the child in the care of her maternal grandmother, and thereafter placed C.B. on a case plan in hopes of reunification. *Id.* However, C.B. missed various scheduled drug tests and, upon finally taking the required drug test, tested positive for illicit substances. *Id.* We affirmed the family court's finding of neglect and held that evidence of C.B.'s substance abuse issues was sufficient to have created a risk of harm to the child because the child, a newborn at the time, needed significant supervision and care. *Id.* at 576. Our decision to uphold this finding was premised on the understanding that a risk of physical or emotional injury to the child is created when there is evidence that the child has been exposed to an illicit substance from the parent, the parent continues to struggle with substance abuse issues, and those issues impact the parent's ability to care for the child. *Id.*

Therefore, in order to find that a parent or guardian has created a risk of physical or emotional injury to the child, the mere fact that the parent or guardian suffers from substance abuse issues is not enough. Instead, the family court must also find that those issues resulted in an actual and reasonable potential for harm to the child. In *M.C. v. Cabinet for Health & Family Services*, the father, M.C., was a party to a case plan with the Cabinet pursuant to which he was required to prevent unsupervised visits with his children's grandmother, attend Alcoholics Anonymous meetings, and "not be under the influence of alcohol while in a caretaking role or in the presence of the children." 614 S.W.3d at 918. However, after taking back custody of his children, M.C. resumed his drinking habit. *Id.* at 919. As a result, the Cabinet

12

filed a DNA petition against M.C., and the family court thereafter found that M.C. had neglected his children by drinking and violating the terms of his case plan. *Id.* at 919-20. The Court of Appeals affirmed. *Id.*

We reversed the decision of the Court of Appeals and vacated the family court's order. *Id.* We held that the Cabinet had failed to show, by a preponderance of the evidence, that M.C.'s actions had "create[ed] or allow[ed] to be created a risk of physical or emotional injury." *Id.* at 926 (quoting KRS 600.020(1)(a)(2)). In reaching this determination, we focused primarily on two factors: (1) the actual impact of M.C.'s actions on his children and (2) the age of the children. *Id.* at 924-26.

Looking to the first factor, we explained that the Cabinet social worker "did not observe anything in [M.C.'s] home that was a threat to the children's health or well-being." *Id.* at 920. The only evidence that suggested that M.C.'s actions negatively impacted the children was that his drinking *sometimes* caused one of the children to argue with M.C. about it. *Id.* at 919. Turning to the second factor, we noted that M.C.'s children were all teenagers and did not need the same level of care that a younger child requires. *Id.* at 924-25. Based on these observations, we emphasized that "we simply cannot affirm a finding of neglect when there has been no harm or actual, reasonable risk of harm to a child." *Id.* at 929.

Substantial evidence that a parent or guardian has created a risk of physical or emotional injury to a child may take many forms. Thus, whether a child has been neglected or abused under KRS 600.020 is a highly fact-specific

13

inquiry. Here, the family court thoroughly reviewed an extensive amount of evidence before finding that Father had neglected Child.

The family court, as the factfinder, is entitled to "draw reasonable inferences from the evidence[.]" *K.H.*, 358 S.W.3d at 32. Although SRO Fortner did not detain Father and require that he immediately submit to a drug test to definitively determine that Father was under the influence of an illicit substance, there was undoubtedly sufficient evidence to reach that conclusion. At the adjudication hearing, SRO Fortner testified that he smelled marijuana emanating from Father's vehicle when Father dropped child off at school. Furthermore, SRO Fortner stated he observed visible smoke on the driver's side of the vehicle, and that Father appeared to be hiding something from him between the driver's seat and the driver's side door. SRO Fortner also indicated that he had smelled the odor of marijuana on Child's clothes on multiple prior occasions.

Taylor, the Cabinet investigator, corroborated SRO Fortner's testimony. Her investigation revealed that other school personnel had also smelled marijuana on Child's clothes on various occasions. Additionally, Taylor testified that on her initial attempt to visit Father's home, of which Father did not have notice, she could smell the odor of marijuana coming from the residence and see Child sitting in the living room alone. Though she did not smell marijuana on her second visit to Father's home, we find this fact relatively insignificant given that Father was on notice of Taylor's intention to visit on this date.

14

Finally, the results of Father and Child's drug tests are telling. Father tested positive for the metabolite of the illicit form of marijuana, Carboxy-Delta-9-THC. In fact, Rios, the Cabinet's expert witness, testified that the concentration of Carboxy-Delta-9-THC found in Father's system was so high that it had surpassed the laboratory's testing ceiling for the drug. Furthermore, Child tested positive for Native THC and carboxy-THC, indicating that Child had been exposed to marijuana.[3] These test results not only lend significant credibility to SRO Fortner's testimony that Father was smoking marijuana while driving Child to school, but also demonstrate that Child's proven exposure to marijuana was likely a direct consequence of Father's substance use.

The above evidence demonstrates that it was reasonable for the family court to deduce that (1) Father smoked marijuana while caring for Child; (2) Father smoked marijuana in an enclosed vehicle with Child present; and (3) Father drove Child to school while under the influence of marijuana. Father argues that the Cabinet was required to present expert witness testimony to prove Child's marijuana exposure constituted a "physical injury" under the statute. This argument misidentifies where Father created a risk of physical

---

[3] On several occasions throughout its "Findings of Fact, Conclusions of Law," the family court incorrectly stated that Child tested positive for ingestion of marijuana. However, Rios explicitly testified that the Child's drug test results only revealed that he had been *exposed* to marijuana, not that he had *ingested* it. Rios explained that while she could not conclusively rule out the possibility that Child had ingested the drug, she could not testify to the likelihood of that occurrence, as the test had only assessed exposure. Nevertheless, we hold this mischaracterization of the evidence inconsequential in light of the other compelling evidence presented at the adjudication hearing.

15

injury to Child. Here, the risk of physical injury to Child arose in the *combination* of Child's exposure to the illicit substance and Father's operation of a motor vehicle with Child while under the influence of that substance.

This result is directly in line with our precedent on the matter. As we recognized in *Cabinet for Health & Family Services ex rel. C.R. v. C.B.* and *M.C. v. Cabinet for Health & Family Services*, where there is evidence that a parent or guardian has exposed a child to illicit substances, engaged in actions that have actually endangered the safety of a child, and the child is of a young age, it is permissible for the family court to find that the parent has created a risk of physical injury because those actions could reasonably result in an "impairment of [the child's] physical condition." KRS 600.020(49). Here, similar to the child in *C.B.*, Child was also of a young age (six years old) and tested positive for exposure to an illicit substance. 556 S.W.3d at 575-76. Furthermore, applying *M.C.*'s requirement that there be an "actual and reasonable potential for harm," 614 S.W.3d at 926, it is clear Father's actions had the potential to harm Child. Marijuana use impairs a driver's senses, increasing the risk of harm to the driver, passengers, and others on the road. This heightened danger is precisely why driving under the influence is prohibited by the law of our Commonwealth. *See* KRS 189A.010. Father's decision to drive Child to school while under the influence of marijuana is undeniable evidence that he created a risk of physical injury to Child. His actions presented a "risk of harm . . . more than a mere theoretical possibility"

16

and constituted "a threat to [Child's] health or well-being." *M.C.*, 614 S.W.3d at 920-23.

Indeed, while family courts do not have unfettered discretion when it comes to restricting parents' rights to their children, the family court certainly does not have to wait for actual harm to occur before taking protective measures. *C.B.*, 556 S.W.3d at 576. Returning to our standard of review, "an appellate court is obligated to give a great deal of deference to the trial court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *D.G.R. v. Commonwealth, Cabinet for Health & Fam. Servs.*, 364 S.W.3d 106, 113 (Ky. 2012) (citations omitted). The testimony of SRO Fortner and Brittany Taylor, coupled with the evidence of Father and Child's drug tests, clearly constituted "some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people" to support the family court's findings. *C.B.*, 556 S.W.3d at 574 (citing *Smyzer v. B.F. Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky. 1971)).

Accordingly, the family court's findings were supported by substantial evidence and were thus not clearly erroneous. Furthermore, it was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles" for the family court to conclude, based on the evidence, that Father "[c]reate[d] or allow[ed] to be created a risk of physical or emotional injury to the child." *R.S.*, 570 S.W.3d at 546 (citing *Goodyear Tire & Rubber Co.*, 11 S.W.3d at 581); KRS 600.020(1)(a)(2). We therefore reverse the Court of Appeals and affirm the

17

family court's determination that Father neglected Child by creating a risk of physical injury to Child.

## III. CONCLUSION

The family court was not clearly erroneous and did not abuse its discretion in finding that Father neglected Child by creating a risk of physical or emotional injury to Child. Therefore, we reverse the decision of the Court of Appeals and reinstate the order of the Calloway Circuit Court.

Lambert, C.J.; Bisig, Conley, Keller, Nickell and Thompson, JJ., sitting. Lambert, C.J.; Bisig, Conley and Nickell, JJ., concur. Thompson, J., concurs in result only without opinion. Goodwine, J., not sitting.

COUNSEL FOR APPELLANT, COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY SERVICES:

Kevin Jay Martz
Office of Legal Services

Whitney Schroeder Ladd

COUNSEL FOR APPELLANT, R.O., A MINOR CHILD:

Whitney Coleman Stringer

COUNSEL FOR APPELLEE, K.O.:

Christopher Earl Hendricks

COUNSEL FOR APPELLEE, S.O.:

Sarah Coursey Jones
Law Office of Sarah Coursey Jones, PLLC