**V.S., Appellant,**

v.

**COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES; B.T.G. Jr., a Child; V.B.G, a Child; and M.D.I., a Child, Appellees.**

No. 2005–CA–001338–ME.

Court of Appeals of Kentucky.

May 5, 2006.

Modified and Ordered Published June 16, 2006.

Robert C. Bishop, Elizabethtown, KY, for appellant.

Richard G. Sloan, Elizabethtown, KY, for appellee Commonwealth of Kentucky, Cabinet for Health and Family Services.

Dawn Lonneman Blair, Guardian Ad Litem, Elizabethtown, KY, for appellees B.T.G. Jr., V.B.G., and M.D.I.

Before BARBER and MINTON, Judges; HUDDLESTON, Senior Judge.[1]

## OPINION

MINTON, Judge.

V.S. asks us to reverse the family court's order that involuntarily terminated her parental rights to three minor children. Although V.S. failed to plead or otherwise defend the proceedings in family court, we hold that the Kentucky Cabinet for Family Services failed to present sufficient evidence of probative value at the termination hearing to establish grounds for termination by clear and convincing evidence. So we must vacate and remand.

In September 2004, the Cabinet filed a petition to terminate involuntarily V.S.'s parental rights to B.T.G. Jr. (born March 1993), V.B.G. (born December 1993), and M.D.I. (born September 1996).[2] The family court appointed a guardian *ad litem* for the children. V.S. was personally served with the Cabinet's petition in October 2004, but she filed no answer or other responsive pleading. In May 2005, the family court conducted a hearing on the Cabinet's termination petition. And V.S. did not appear at the hearing.

At the hearing, the Cabinet called one witness, Carlonda Fields, one of the Cabi-

net's social service workers. Fields testified that the children had been in the Cabinet's custody since November 2003 by virtue of a district court order. The Cabinet never offered any district court orders in evidence. Nevertheless, Appendix C to the Cabinet's brief contains what purports to be the Hardin District Court's orders committing the three children to the Cabinet's care. The Cabinet has also attached what purports to be related calendar entries from the district court proceedings as appendix A to its brief. Although V.S. has not objected to these exhibits, we may not consider them because we are limited to reviewing the record as the case was presented to the family court.[3] We agree with the guardian *ad litem* that the family court had the authority to find the children to be neglected or abused without the introduction of the district court's orders. But the Cabinet may not bolster its case by relying on those alleged district court orders on appeal when it did not rely on them below.

According to Fields, the Cabinet took custody of all three children due to both educational and medical neglect. More precisely, the medical neglect applied only to M.D.I., a child with special needs because she has spina bifida. According to Fields, V.S. permitted V.B.G. to place a catheter in M.D.I. As to the educational neglect, Fields testified that when the Cabinet assumed custody of B.T.G. Jr., he functioned on a kindergarten reading level even though he was eleven years old at the time. Furthermore, Fields testified, without elaboration, that the children had

---

**1.** Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

**2.** The minor children's fathers were also named in the Cabinet's petition. Ultimately,

the rights of those fathers were terminated; but the termination of the fathers' rights is not before us.

**3.** *See, e.g., Fortney v. Elliott's Adm'r,* 273 S.W.2d 51, 52 (Ky.1954).

missed many days of school because V.S. allegedly stated that she could not get up and get them to school.

The hearing lasted slightly over fifteen minutes. Several days after the hearing, the family court rendered findings of fact and orders terminating V.S.'s parental rights to each child. Despite the fact that she took no discernible steps to contest the termination proceedings below, V.S. has appealed the termination orders.

Before we analyze the issues raised in V.S.'s brief, we must identify the parameters of appellate review. Normally, when a party fails to raise an issue before the trial court, our review is limited to determining if the claimed error is so egregious as to constitute palpable error under Kentucky Rules of Civil Procedure (CR) 61.02.

■ But, in the case at hand, we construe V.S.'s brief as arguing that the Cabinet did not produce sufficient probative evidence at the hearing to support the family court's decision to terminate her parental rights. So, in cases like this we apply the clearly erroneous standard contained in CR 52.01, not the palpable error standard.

CR 52.01 provides, in relevant part, that if an action is tried without a jury, "[f]indings of fact shall not be set aside unless clearly erroneous...." In *Eiland v. Ferrell*,[4] the Supreme Court explained that [i]n actions tried by the court without a jury, the sufficiency of evidence to support the findings of fact may be raised on appeal without regard to whether there was an objection to such findings or whether there was a post-judgment motion. CR 52.03. In William O. Bertlesman and Kurt A. Philips, 7 *Kentucky Practice*, § 52.03 (4th ed.1984), it is explained that "[a]n objection of this na-

ture would be a needless formality since the very basis of the final judgment is involved." When the only issue is whether the evidence was sufficient to support the findings of the trial court, there is no need to object or make additional motions. Such objections or motions call for nothing more than review of a completed act and are redundant or worse.

And, in *M.P.S. v. Cabinet for Human Resources*,[5] this Court held that the

standard of review in a termination of parental rights action is confined to the clearly erroneous standard in CR 52.01 based upon clear and convincing evidence, and the findings of the trial court will not be disturbed unless there exists no substantial evidence in the record to support its findings.

Kentucky Revised Statutes (KRS) 625.090, which states the grounds for involuntary termination of parental rights, provides, in relevant part, that:

(1) The Circuit Court may involuntarily terminate all parental rights of a parent of a named child, if the Circuit Court finds from the pleadings and by clear and convincing evidence that:

(a) 1. The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction;

2. The child is found to be an abused or neglected child, as defined in KRS 600.020(1), by the Circuit Court in this proceeding; [and]

\* \* \*

(b) Termination would be in the best interest of the child.

**4.** 937 S.W.2d 713, 715–716 (Ky.1997)

**5.** 979 S.W.2d 114, 116 (Ky.App.1998).

(2) No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:

\* \* \*

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

\* \* \*

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;

In the case before us, the family court found that the three minor children were abused or neglected children, as that term is defined at KRS 600.020(1). And although the termination orders do not specify which subsection of KRS 600.020(1) the family court found applicable, the orders suggest that the family court relied on KRS 600.020(1)(h), which provides that a child is an abused or neglected child if the child's parent "[d]oes not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being."

■ As stated earlier, the only medical neglect allegations are that V.S. allegedly permitted V.B.G. to place a catheter in M.D.I., and that M.D.I. missed some doctor's appointments. So there is no evidence of medical neglect offered as to V.B.G. or B.T.G. Jr.

We do not take allegations of neglect of children lightly. But in the record before us, there was no evidence presented to explain why M.D.I. allegedly missed the medical appointments, nor was there evidence offered to suggest what harm missing those appointments may have caused M.D.I. And although permitting one minor child to catheterize another minor child is troublesome to us, there was no evidence offered to show the harmful effect, if any, that the catheterization had on M.D.I. or V.B.G. Additionally, there was no evidence offered to suggest that V.S. knew of or condoned the catheterization. So the record also contains insufficient evidence to support a finding that each of the three children had medical needs that V.S. neglected.

■ Having found that the Cabinet failed to offer sufficient evidence to support a finding of medical neglect, we turn our attention to the claims of educational neglect. Chief among those claims is the Cabinet's contention that V.S. stated that she was unable to arise early enough to get the children to school.

We first note that the Cabinet introduced no proof, such as school records, showing how many days of school each child missed. Again, the Cabinet refers us to alleged district court calendar entries containing cryptic notes about the number of absences of V.B.G. and B.T.G. Jr. We have reviewed the videotape of the family court hearing, and we have not seen where those calendar entries were offered into evidence. So we may not consider the calendar entries. Second, it would appear

that Fields's testimony regarding statements allegedly made by V.S. are hearsay, especially in light of the fact that Fields did not testify when the alleged statement was made or in what context the alleged statement was made.

We are also aware of the Cabinet's contention that B.T.G. Jr. was reading at a level far below what would be expected for a child of his age. According to the Cabinet, B.T.G. Jr.'s difficulty reading tends to prove V.S.'s neglect of this child's educational needs. Sadly, reading difficulties among young boys are not rare; so this does not necessarily prove parental abuse or neglect. Children may have problems learning and reading, regardless of the level of attention they receive at home. According to the evidence, B.T.G. Jr. has upped his reading level since being placed in the Cabinet's custody. But the Cabinet offered no proof to explain why his skills improved. So, in other words, the Cabinet has not shown that B.T.G. Jr.'s reading difficulties arose from action or inaction by V.S.

■ The third and final main point relied upon by the Cabinet is Fields's statement that V.S. was unable to provide a suitable home for her children. But, as with the other elements, there was no concrete evidentiary support for Fields's conclusory response to the Cabinet's counsel's leading question on that topic. The Cabinet did not adduce specific testimony as to how V.S.'s home was unsuitable. And we are unable to give much weight to Fields's opinion about the home because she provides no supporting facts. Furthermore, we observe that the Cabinet did not show that V.S.'s allegedly substandard home was due to factors other than poverty alone, as required by KRS 625.090(2)(g).

The family court may properly draw negative inferences against V.S. for her failure to appear and defend the termination proceedings. But the Cabinet, not V.S., had the burden of proof at the final hearing, meaning that V.S.'s absence did not relieve the Cabinet of its obligation to present sufficient probative evidence to support its petition.

We are mindful of the enormous time pressures faced by both the family court and the attorneys involved in this case. But the state's effort to sever permanently the relationship between parent and child is a serious affair, as evidenced by the heightened burden of proof required for termination. Based on the record before us, we believe that in its haste, the Cabinet failed to show the family court clear and convincing evidence that V.S.'s parental rights should be terminated. After all, "[i]t is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street." [6]

For the foregoing reasons, the orders of the family court terminating V.S.'s parental rights to B.T.G. Jr., V.B.G., and M.D.I. are vacated; and this case is remanded to the family court for further proceedings consistent with this opinion.

ALL CONCUR.

■

(Jackson, J., dissenting).

---

**6.** *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 387–388, 68 S.Ct. 1, 92 L.Ed. 10 (1947)