v.

CABINET FOR HEALTH AND FAMI-
LY SERVICES, Commonwealth Of
Kentucky, In the Interest Of K.H., Ap-
pellees.

and

K.H., Appellant,

v.

Cabinet for Health and Family Ser-
vices, Commonwealth Of Kentucky,
In the Interest of A.B.H., Appellees.

Nos. 2011–CA–000896–ME,
2011–CA–000897–ME.

Court of Appeals of Kentucky.

Dec. 22, 2011.

Katie B. Mullins, Paintsville, KY, for
Appellant.

D. Joleen Frederick, West Liberty, KY,
for Appellees.

Before ACREE, CLAYTON, and
WINE, Judges.

*OPINION*

WINE, Judge:

The underlying facts of this action are
not in dispute. K.H. and A.H. are the
mother and father, respectively, of two
children, A.B.H. (born August, 2005) and
K.S.H. (born October, 2009).[1] On January
3, 2001, K.H.'s twelve-year old cousin
(A.K.Y.) alleged that A.H. had touched her
inappropriately and made inappropriate
comments of a sexual nature while she was

---

1. In the petition, the younger child is referred
to only by her first and last names and these
initials (K.H.) are used in the style of this
appeal. At the hearing, the child's mother
testified that the family calls her by her mid-
dle name, beginning with S. To avoid confu-
sion with her mother, the child hereafter will
be referred to by the initials K.S.H.

staying at K.H. and A.H.'s house. Following an investigation, the Cabinet for Health and Family Services (the Cabinet) and the Kentucky State Police concluded that the allegation was substantiated.

While the investigation was pending, K.H. signed a Prevention Plan agreeing to the Cabinet's recommendation that she not leave the children alone with A.H. Upon completion of the investigation, the Cabinet asked K.H. to sign an "Aftercare Plan" stating that she would not allow A.H. to be alone with the children or allow A.H. to bathe the children, or to change the children's clothes or diapers. K.H. refused to sign the Aftercare Plan.

On March 11, 2011, the Cabinet filed separate petitions alleging that K.H. and A.H. had neglected the children. With regard to K.H., the Cabinet alleged that her refusal to sign the Aftercare Plan exposed the children to a risk of sexual abuse from A.H. and therefore amounted to neglect. On April 6, 2011, the trial court entered orders directing that A.H. shall not reside in the home or have any contact with the children.

The trial court conducted an evidentiary hearing on the petitions on April 18, 2011. At the hearing, the Cabinet presented evidence from the school guidance counselor who initially heard and reported A.K.Y.'s allegations; and from the social worker and Kentucky State Trooper who investigated the allegations. However, the trial court declined to allow A.K.Y. to testify, concluding that the substance of her allegations was not relevant to determine whether A.B.H. and K.S.H. were neglected.

Social Worker Barry Frisby testified that A.H. was cooperative with the Cabinet while the investigation was ongoing, but refused to agree to any permanent restrictions after the allegations were substantiated. Likewise, K.H. testified that she had cooperated with the Cabinet and that she had complied with the trial court's April 6, 2011, order directing that K.H. have no contact with the children. However, she testified that she had reasons to doubt A.K.Y.'s truthfulness and that she did not believe that A.H. was a danger to her children.

At the conclusion of the hearing, the trial court found that A.B.H. and K.S.H were neglected based on the allegations in the Cabinet's petition. Specifically, the trial court found that the Cabinet had given K.H. information about a risk of harm to the children from A.H. and that she failed to protect the children from that risk of harm by refusing entering into the Aftercare Plan. The court directed that the children remain in the home, but that A.H. shall not reside in the home or have unsupervised contact with the children. The trial court scheduled a disposition hearing for June 20, 2011. However, K.H. filed her notice of appeal prior to that date. We find no indication that A.H. has appealed from the court's order.

■ The sole issue on appeal is whether the Cabinet presented sufficient evidence to establish that K.H. has neglected A.B.H. and K.S.H. Kentucky Revised Statutes (KRS) 620.100(3) provides that the Commonwealth bears the burden of proving dependency, neglect, or abuse of a child by a preponderance of the evidence. The Cabinet does not allege that A.B.H. and K.S.H. have ever been subjected to any direct acts of abuse or neglect. Rather, the Cabinet contends that K.H.'s refusal to sign the Aftercare Plan amounts to neglect by exposing the children to a risk of sexual abuse from A.H. The trial court's findings regarding the weight and credibility of the evidence shall not be set aside unless clearly erroneous. Kentucky Rules of Civil Procedure (CR) 52.01. On the

other hand, the trial court's application of the law to those facts is subject to *de novo* review. *A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc.,* 998 S.W.2d 505, 509 (Ky.App.1999).

Since the facts of this case are not materially in dispute, this matter turns of the sufficiency of the evidence with respect to the statutory definition of neglect. In pertinent part, KRS 600.020(1) defines an "[a]bused or neglected child" to include "a child whose health or welfare is harmed or threatened with harm when his parent, guardian, or other person exercising custodial control or supervision of the child ... (f) Creates or allows to be created a risk that an act of sexual abuse, sexual exploitation, or prostitution will be committed upon the child[.]"

The Cabinet urges that its restrictions on A.H. are necessary to protect the children against any risk that he may sexually abuse the children. We do not doubt the Cabinet's good faith and genuine desire to protect the children. However, we are concerned about the breadth of the authority which the Cabinet is asserting. There is no allegation that A.H. has ever engaged in any act of sexual abuse directed toward his children. Furthermore, the Cabinet admits that K.H. had no legal obligation to sign the Aftercare Plan. Nevertheless, the Cabinet seeks to impose a legal obligation on K.H. by asserting that her failure to sign the Aftercare Plan amounts to neglect.

The Cabinet's position opens the door to a potentially wide-reaching intrusion by the state into the parent-child relationship. If the Cabinet can show that K.H. neglected her children merely by refusing to follow the Cabinet's recommendations, then it could also seek to enforce other views about proper parenting in a similar manner. While the state has a compelling interest to protect its youngest citizens, state intervention into the family between parent and child must be done with utmost caution. It is a very serious matter. *See M.E.C. v. Commonwealth, Cabinet for Health and Family Services,* 254 S.W.3d 846, 851 (Ky.App.2008), and *V.S. v. Commonwealth, Cabinet for Health and Family Services,* 194 S.W.3d 331, 335 (Ky.App.2006). *See also Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Although these cases urge such caution in the context of termination of parental rights, the parents' fundamental interest in the care, custody and management of their children is not diminished by lesser state intrusions into the parent-child relationship. *See Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000).

We must also be mindful that an adjudication of neglect carries long-reaching consequences. This finding may be used against K.H. in subsequent proceedings, including proceedings to remove the children from the home or to terminate her parental rights. A finding of neglect may also carry a personal or social stigma far beyond the limited circumstances involved in this case. Thus, the courts should be very careful about making such a finding merely out of caution.

Furthermore, when the Cabinet seeks to compel a parent to comply with its directives, the courts must be vigilant to protect against overreaching of that authority. It is not enough for the Cabinet to show that K.H. would be well-advised to agree to the terms of the Aftercare Plan. The applicable statutory definition requires a finding that K.H. created or allowed to be created a risk that an act of sexual abuse will be committed upon the children.

To meet its burden of proof, the Cabinet first presented evidence that A.K.Y. made

allegations against A.H. and that it found those allegations to be substantiated. But as the term is used in this case, a "substantiated" allegation is simply an administrative determination finding "[a] preponderance of evidence exists that abuse, neglect, or dependency was committed by the person alleged to be responsible." 922 Kentucky Administrative Regulations (KAR) 1:330 § 1(9)(c). The Cabinet's substantiation of the allegations is not binding upon the court and has no preclusive effect in any subsequent proceeding.

K.H. argues that the trial court could not properly assess the risk to the children without first determining whether A.B.Y.'s allegations were credible. Without such a determination, she contends that the trial court's finding that a risk exists was based only on the Cabinet's determination that the allegations were substantiated. However, K.H. objected to the Cabinet's attempt to call A.K.Y. to testify. The trial court agreed, concluding that the validity of the underlying allegations by A.K.Y. against A.H. is not relevant to this case.

We disagree. While the Cabinet was not required to prove the validity of A.K.Y.'s allegations, her credibility was clearly relevant to establish the nature of the risk which A.H. poses. Since K.H. successfully excluded A.K.Y.'s testimony at the hearing, she will not be heard to complain on appeal that her testimony was necessary to establish that A.H. posed a risk to his children.

Nevertheless, the Cabinet merely established that there was evidence to believe that A.H. sexually abused A.K.Y. But as we have already noted, there is no allegation that A.H. committed or attempted to commit acts of abuse against his own children. Thus, the Cabinet also bears the burden of showing that A.H. poses a risk of harm to A.B.H. and K.S.H., and that K.H. failure to agree to the Aftercare Plan

exposes the children to this risk. Furthermore, the risk of harm must be more than a mere theoretical possibility, but an actual and reasonable potential for harm. Without such a requirement, the Cabinet could subject K.H. a finding of neglect based only on her refusal to comply with its recommendations.

■ As the fact-finder, the trial court was entitled to draw reasonable inferences from the evidence. *See Martin v. Com.,* 13 S.W.3d 232, 235 (Ky.1999). However, the Cabinet cannot sustain its burden of proof by the compounding of inferences upon inferences. *American Ins. Co. v. Horton,* 401 S.W.2d 758, 760 (Ky.1966). A conclusion based on multiple levels of inference does not rise above the level of mere speculation. *Rollins v. Avey,* 296 S.W.2d 214, 216 (Ky.1956), citing *Le Sage v. Pitts,* 311 Ky. 155, 223 S.W.2d 347, 352 (Ky.1949).

In this case, the trial court's finding of neglect is based upon compounded inferences. Based on its substantiation of A.K.Y.'s allegations, the Cabinet infers that A.H. poses a risk of harm to his own children. To bolster this inference, the Cabinet points to A.K.Y.'s allegation that A.H. abused her while A.B.H. was sleeping in the same room with her. While the child's presence during the alleged acts of abuse is relevant to determine the existence of a risk of harm, the Cabinet offered no other evidence showing a risk of harm when the child is oblivious to the risk. Since there were pending criminal charges against him, A.H. declined to meet with Cabinet investigators prior to the April 18, 2011, hearing. At the hearing, the Cabinet conceded that it could not evaluate whether A.H. poses a risk to his own children.

But based on this unproven, potential risk of harm, the Cabinet further inferred

that that the restrictions set out in the Aftercare Plan were necessary and that K.H.'s failure to agree to those terms amounted to neglect as defined in KRS 600.020(1)(f). This conclusion is too attenuated from the established evidence of record. There is no allegation that K.H. has done anything improper in the care of her own children. The Cabinet concedes that she is a good and fit mother. Her children are well-cared for and have never been abused. The Cabinet also admits that she cooperated with them during its investigation of A.K.Y's allegations. At worst, K.H. has chosen to believe in the innocence of her husband, which she is entitled to do. For this, the Cabinet has labeled her a neglectful parent. Under the circumstances, we must conclude that the trial court's finding of neglect was clearly erroneous as it applied to K.H.

In reaching this conclusion, however, we must again emphasize that A.H. has not appealed the trial court's order. Therefore, the trial court's orders with respect to him remain in effect, as do the restrictions which the trial court imposed on him which include K.H. supervising the visitation between A.H. and the children. At the conclusion of the April 18, 2011, hearing, the trial court directed A.H. to meet with the Cabinet for an evaluation of whether he poses a risk of harm to the children. The court further directed that this evaluation would be sealed within the confidential file to avoid any potential issues of self-incrimination. The results of this evaluation may be relevant in any future proceedings before the Family Court. Furthermore, it appears from the record that there are criminal charges pending against A.H. as a result of A.K.Y.'s allegations. We hope that this matter is quickly resolved and further intrusions into the family relationship may be kept to a minimum.

Accordingly, the orders of the Morgan Family Court finding A.B.H. and K.S.H. to be neglected are reversed insofar as they apply to K.H.

ALL CONCUR.