RENDERED: JANUARY 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0842-ME

A.H.                                                                          APPELLANT

v.                   APPEAL FROM SHELBY FAMILY COURT
                   HONORABLE S. MARIE HELLARD, JUDGE
                        ACTION NO. 23-J-00178-001

CABINET FOR HEALTH & FAMILY
SERVICES; A.A., A CHILD; AND
S.A.                                                                          APPELLEES

AND

NO. 2024-CA-0843-ME

A.H.                                                                          APPELLANT

v.                   APPEAL FROM SHELBY FAMILY COURT
                   HONORABLE S. MARIE HELLARD, JUDGE
                        ACTION NO. 23-J-00179-001

CABINET FOR HEALTH & FAMILY
SERVICES; E.A., A CHILD; AND S.A.                                             APPELLEES

AND

NO. 2024-CA-0844-ME

A.H.                                                                                            APPELLANT


                        APPEAL FROM SHELBY FAMILY COURT
v.                    HONORABLE S. MARIE HELLARD, JUDGE
                        ACTION NO. 23-J-00180-001


CABINET FOR HEALTH & FAMILY
SERVICES; J.A., A CHILD; AND S.A.                                    APPELLEES


                                    OPINION
                                    AFFIRMING

                              ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

CETRULO, JUDGE:  This is a consolidated appeal from the adjudication and

disposition orders of the Shelby Family Court finding that the three minor children

of Appellant A.H. ("Mother"), A.A., E.A., and J.A. (collectively, "the children"),

were abused and neglected, and continuing the removal of the children and

placement with other family members.  Mother argues the evidence was

insufficient to support the finding of neglect under Kentucky Revised Statute

("KRS") 600.020.

## FACTUAL AND PROCEDURAL BACKGROUND

The dependency, neglect, or abuse petitions were filed as the result of a single incident on December 23, 2023. The petitions allege that on that date, Appellee S.A. ("Father") was found to be in a caretaking role of the parties' three minor children. This was in violation of an August 2023 Domestic Violence Order ("DVO") naming the children and Mother as protected persons. The DVO only permitted visitation/contact by Father with the children at a supervised facility. When law enforcement arrived at the home in December, Father initially lied to officers regarding his identity, claiming to be someone else. However, the children identified and referred to him as their father. The officers ultimately confirmed his identity from his driver's license. Father was also observed to be heavily intoxicated, and an almost empty bottle of alcohol was seen in the home.

Based on their personal observations, two police officers testified that Father appeared to have been in the home for an extended period of time, and he was ultimately arrested for violation of the DVO. The officers attempted to locate Mother, making multiple calls that went unanswered. Police were informed that Mother was with her niece ("Abby"). Upon making contact, Abby stated that Mother was too intoxicated to talk on the phone, and her phone battery was dead. When no other relatives could be located to take the children, officers contacted the Cabinet for Health & Family Services ("Cabinet").

Cabinet worker, Brianna Freeman ("Freeman") filed the emergency petitions related to the children and came to the house that night. She arrived after Father had been arrested. She testified the children were not in distress, but that the house was cluttered, and the youngest child, who has autism and is non-verbal, was lying down on the floor in a toy room area, next to the wall, asleep in only his underwear. She also testified she observed male clothing around the home. Mother eventually arrived with Abby while Freeman was still in the home. She was observed stumbling, slurring her words, and smelling of alcohol. At that time, Mother told Freeman she had left her children with their aunt, not Father. She denied knowing Father was in the home. The children were taken by Freeman into emergency protection. The next morning, Mother called Freeman and acknowledged knowing Father was in the home, but denied she had previously violated the DVO.

On December 28, a temporary removal hearing was scheduled, but Mother and Father stipulated to temporary custody to continue with the Cabinet. On January 17, 2024, Father stipulated to the allegations of the petition and conceded the children were neglected. Mother did not stipulate and proceeded to the adjudication hearing conducted on June 14, 2024.

At that hearing, the Cabinet produced testimony from the two investigating officers and Freeman. On cross-examination, Freeman

-4-

acknowledged the petition was filed because Mother had not left the children in the care of a responsible adult and appeared to have violated the DVO. Further, Freeman stated Mother was in no position to care for the children herself.

Mother testified and also presented testimony from Abby, Father, Father's brother, and a subsequent Cabinet worker. Abby testified she believed Father's brother was going to watch the children while she and Mother went out, but she did not see him that day. Father's brother testified he did watch the children for a few hours that day, but he needed to leave and called Father to come and watch the children. He claimed Mother did not know this. Father corroborated this and also claimed Mother did not know he was coming to the house. Mother herself testified she left the children with Father's brother, not his sister as she had previously claimed. She again denied knowing Father was at the house and denied she had told Freeman otherwise. All of the witnesses for Mother had varying and inconsistent timeframes for these events.

After hearing the testimony, the family court found by a preponderance of evidence that Mother had neglected the children by knowingly violating the DVO and being intoxicated to the point she could not provide care for them. The disposition orders were entered on June 19, continuing custody with a family member, prior to the filing of the notice of appeal. Only Mother appeals.

## STANDARD OF REVIEW

A trial court has broad discretion in its determination of whether a child is neglected or abused. *Dep't for Human Res. v. Moore*, 552 S.W.2d 672, 675 (Ky. App. 1977). "The adjudication shall determine the truth or falsity of the allegations in the complaint. The burden of proof shall be upon the complainant, and a determination of dependency, neglect, and abuse shall be made by a preponderance of the evidence." KRS 620.100(3). In order to adjudicate a child as abused or neglected, the family court must find at least one of the 10 grounds listed in KRS 600.020(1). Here, the family court found the Cabinet had proven four grounds by a preponderance of the evidence.[1]

The Shelby Family Court made the following conclusions of law regarding each of the three (3) minor children who are the subject of this appeal:

1) Mother inflicted or allowed to be inflicted upon the child physical or emotional injury by other than accidental means;

2) Mother created or allowed to be created a risk of physical or emotional injury by other than accidental means;

3) Mother engaged in a pattern of conduct that made her incapable of caring for the immediate and ongoing needs of the child, including but not limited

---

[1] The family court checked four boxes on the AOC forms for each child and attached separate findings of fact.

to parental incapacity due to a substance use disorder as defined in KRS 222.005; and,

4) Mother did not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's wellbeing when financially able to do so or offer financial or other means to do so.

These conclusions each derive from the definitions of an "abused or neglected child" contained in KRS §§ 600.020(1)(a)1., 600.020(1)(a)2., 600.020(1)(a)3., and 600.020(1)(a)8. Mother argues that none of these four conclusions by the family court is supported by substantial evidence in the record. However, as noted, the family court is only required to find at least one of the grounds listed in KRS 600.020(1) by a preponderance of the evidence. We shall address each conclusion in turn.

**ANALYSIS**

After reviewing the record, we find very little evidence that Mother inflicted or allowed physical or emotional injury to be inflicted upon the children. *See* KRS 600.020(1)(a)1. There was no evidence at the hearing that the children were injured, and in fact, the evidence suggested they were not in distress or injured. There was testimony from the officers as well as the social worker that the home was cluttered and the children said they were hungry, but there was also evidence there was food in the house. There was concern the youngest child was

found asleep on the floor in his underwear, but there was also testimony his autism led him to routinely burrow in this manner and remove his clothes. The two older children had been in the hot tub with Father and were watching TV or playing in their rooms when the officers and Freeman arrived. There was no sign of distress or injury. As to Mother, we find the evidence insufficient to support a determination of neglect under KRS 600.010(1)(a)1.

However, allowing Father to provide their care when the DVO was in effect was clearly a risk of injury that Mother created or allowed. *See* KRS 600.020(1)(a)2.; *see also M.C. v. Cabinet for Health & Fam. Serv.*, 614 S.W.3d 915 (Ky. 2021). In *M.C.*, the Kentucky Supreme Court closely examined what constitutes a risk of injury under KRS 600.020(1)(a)2. Both parties rely upon *M.C.* to support their positions in this appeal. In *M.C.*, the Court found the "risk of harm must be more than a mere theoretical possibility, but an actual and reasonable potential for harm." 614 S.W.3d at 926 (citing *K.H. v. Cabinet for Health & Fam. Serv.*, 358 S.W.3d 29, 32 (Ky. App. 2011)). Here, the family court specifically found as follows:

> There was an existing DVO in place on December 23, 2024. [Mother] had made allegation of domestic violence against [Father] and the Court, after hearing the Petition for an Emergency Protective Order found: "Respondent has struck the Petitioner in the past, while the children were in the home. Respondent has been violent and broken the things in the parties' home at times. The Petitioner is in fear of the Respondent. The children will

try and stop the fighting. The Respondent has threatened to take the children from the country." [Mother] testified during the domestic violence hearing that without a protective order she believed that [Father] would kill her.

The family court also noted the numerous inconsistencies between Mother's own versions of events and her own witnesses which the family court did not find credible. Based upon the totality of the testimony, the family court found that Mother failed to abide by an active DVO by allowing Father to be in her home with the children during a time when he was intoxicated and unable to properly care for the children. Mother was so heavily intoxicated upon her return that she could not be left in a caregiving role. Even though Mother denied she allowed Father into her home and denied any knowledge he was there, there was evidence to indicate otherwise, as testified to by the officers and the cabinet worker. Indeed, the children suggested he had been there for some period of time. There was no testimony disputing that Father appeared to be heavily under the influence.

In contrast, in *M.C.*, the evidence was uncontroverted that the father was providing appropriate care to his teenage children, and the Cabinet worker in that case had no concerns about whether they were being properly provided for. *Id.* at 924-25. It was never alleged that the father would become aggressive or violent toward his children or spouse. *Id.* Here, though, there was testimony to support the family court's finding of a risk of harm. It is telling that the Cabinet's brief is silent as to the family court's rulings under the other three provisions and

-9-

focuses solely on the family court's finding of the risk to the children. However, we agree with the Cabinet that the family court's finding that the Mother created an actual risk of harm was supported by a preponderance of evidence, and was not an abuse of the family court's discretion.

We find merit in Mother's argument there was no evidence presented to demonstrate a pattern of conduct on her part which rendered her incapable of caring for the needs of the children. *See* KRS 600.020(1)(a)3. The family court did not indicate any such pattern, and we have found no evidence nor even any allegation of prior instances that Mother went out drinking or violating the DVO. A single incident hardly constitutes a pattern of behavior. *S.R. v. J.N.*, 307 S.W.3d 631, 635 (Ky. App. 2010). In *S.R.*, we reversed a finding of neglect based upon a single incident of a mother who was out for a night of drinking. However, we note in that case, the mother left the child with family members who were not the subject of a protective order. *Id.* at 635. Here, the family court had sufficient, although conflicting, evidence that Mother created a risk to the children. However, the court did not have evidence of any pattern of conduct based upon the record before us.

Likewise, there was no evidence presented that Mother did not provide the children with adequate food, clothing, shelter, or medical care necessary. *See* KRS 600.020(1)(a)8. At best, she failed to provide proper

supervision on that one night by allegedly permitting their father, against whom she had sworn out a DVO, to care for the children, a fact she contested. The evidence presented herein did not support a determination that Mother neglected her children under this provision. Still, Mother would have to prove each of those findings was clearly erroneous in order to succeed on appeal.

In the context of an abuse and neglect proceeding, preponderance of the evidence means it is more likely than not the parent neglected and/or abused the children. *Ashley v. Ashley*, 520 S.W.3d 400, 404 (Ky. App. 2017) (citation omitted). The family court as the factfinder is entitled to draw reasonable inferences from the evidence. *K.H. v. Cabinet for Health & Fam. Serv.*, 358 S.W.3d 29, 32 (Ky. App. 2011) (citation omitted). Of course, since the family court is in the best position to evaluate the testimony and weigh the evidence, we will not substitute our own opinion for that of the family court. *L.D. v. J.H.*, 350 S.W.3d 828, 830 (Ky. App. 2011) (citation omitted). This Court has previously held that a risk of abuse or neglect is sufficient to support a finding of neglect. *See Z.T. v. M.T.*, 258 S.W.3d 31, 36 (Ky. App. 2008).

Here, the testimony confirmed Father was found to be in a caretaking role of the children, which violated an active DVO. He was under the influence and in no position to supervise the children. Mother claimed no knowledge of his being there but presented conflicting evidence as to the day's events. The family

-11-

court found the witnesses not credible. Based upon the information obtained by the law enforcement officers and Freeman, Father may have been in the home for some time. Mother admitted to Freeman she had violated the protective order she sought just months earlier, but then denied that at the hearing. Once she was located and returned home, she was in no position to care for her children due to her own intoxication. While the evidence was lacking on other grounds, we find there was sufficient evidence to support the family court's finding of neglect based on the violation of the DVO and the risks that imposed upon her children, combined with the inability of Mother to care for her children on that night. This risk of harm was "more than a mere theoretical possibility," but an "actual and reasonable potential for harm.'" *See M.C.*, 614 S.W.3d at 923 (quoting *K.H.*, 358 S.W.3d at 32). A court can find neglect if an individual "[c]reates or allows to be created a risk of physical or emotional injury as defined in this section to the child by other than accidental means[.]" *Cabinet for Health & Fam. Serv. on behalf of C.R. v. C.B.*, 556 S.W.3d 568, 576 (Ky. 2018) (quoting KRS 600.020(1)(a)2.). As stated, the court need only find one of the grounds to uphold a determination of neglect.

For all the foregoing reasons, we AFFIRM the Shelby Family Court.

ALL CONCUR.

-12-

BRIEF FOR APPELLANT:

Mark D. Dean
Shelbyville, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

J.R. RoBards
Assistant County Attorney
Shelbyville, Kentucky