RENDERED: MARCH 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

No. 2024-CA-1199-ME

B.S.                                                                       APPELLANT


APPEAL FROM GREENUP CIRCUIT COURT
FAMILY COURT DIVISION
v.        HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 24-J-00018-001


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY
SERVICES; C.S., A MINOR; S.S.; AND
COMMONWEALTH OF KENTUCKY,
OFFICE OF GREENUP COUNTY
ATTORNEY                                                       APPELLEES


AND


NO. 2024-CA-1185-ME


B.S.                                                                       APPELLANT


APPEAL FROM GREENUP CIRCUIT COURT
FAMILY COURT DIVISION
v.        HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 24-J-00019-001

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY
SERVICES; J.S., A MINOR; S.S.; AND
COMMONWEALTH OF KENTUCKY,
OFFICE OF GREENUP COUNTY
ATTORNEY                                                    APPELLEES


OPINION AFFIRMING ON APPEAL NO. 2024-CA-1199-ME,
AND REVERSING ON APPEAL NO. 2024-CA-1185-ME

** ** ** ** **

BEFORE:  EASTON, L. JONES, AND McNEILL, JUDGES.

EASTON, JUDGE:  The Appellant challenges the findings of the Greenup Family

Court in a DNA[1] case regarding his children, C.S. (Case Number 2024-CA-1199-

ME) and J.S. (Case Number 2024-CA-1185-ME).  The family court made a

finding of sexual abuse regarding C.S. and a risk of harm finding for J.S.  These

appeals have been consolidated, and we address both findings in this Opinion.  We

affirm the family court's finding of sexual abuse regarding C.S., but we reverse the

finding of risk of harm as to J.S.  The petition leading to the finding of risk of harm

must be dismissed without prejudice to other proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

C.S. is the adopted daughter of B.S. ("Father"), and J.S. is the

biological son of Father.  At the time the abuse allegations arose, C.S. was fifteen

---

[1] Acronym for Dependency, Neglect, and Abuse.

years old, while J.S. was six years old.  Throughout these proceedings, Father and the children's mother ("Mother") were separated, and they are now divorced. Mother and Father's separation preceded the allegations of abuse.

The allegations were made initially in December 2023.  C.S. confided to Mother that Father had sexually abused her.  Mother called law enforcement and made a report that same day.  The investigating trooper made a report to the Cabinet for Health and Family Services ("Cabinet").[2]  The DNA petitions were filed in March 2024.  The Adjudication Hearing occurred on July 23, 2024.  At this hearing, the family court heard testimony from C.S., Trooper Dallas Salyers ("Trooper Salyers") of the Kentucky State Police ("KSP"), and Cabinet worker Stacia Moreland ("Moreland").

C.S. testified that the abuse began in 2020.  She stated it started around the time she began riding horses.  Horseback riding can lead to sore and stiff muscles, and Father would massage her legs after riding.  C.S. testified that while Father would massage her legs, he began to move his hands up her thighs and closer to her "private areas."  She stated he touched her genital area and her "butt."  This occurred when no one else was in the room.  She testified to another occasion where Father picked her up and held her "boobs."  C.S. also told of a time

_____

[2] The KSP trooper also presented to the grand jury, which led to Father's indictment.  Father's criminal action is pending.

when Father came into her room and asked her if she wanted him to put his face between her legs.

On cross-examination, C.S. stated she no longer saw her biological father or half-brother due to sexual abuse they also inflicted on her. She had been in therapy due to this prior abuse. She acknowledged she had not disclosed Father's abuse to any of her therapists. C.S. also agreed with Father's counsel that she had wanted to be adopted by Father. C.S. stated it was because she was the only one in the household that did not have Father's last name. Father's adoption of C.S. had occurred in 2023, after the alleged abuse had occurred. C.S. also admitted to calling Father to ask for a ride on the same day she disclosed the abuse to Mother.

Trooper Salyers testified as to his interview with C.S. He remembered some of the phrases used by C.S., such as "groomed" and "physical progression." He remembered this because it was unusual for a juvenile to use these types of phrases in interviews. Trooper Salyers also stated that C.S. and her mother seemed very calm and relaxed during their interview. His testimony was that C.S. had disclosed to him similar allegations that she testified to during the hearing.

Trooper Salyers also testified there is a pending investigation regarding allegations of Father abusing J.S. This was confirmed by Moreland, who

-4-

stated the Cabinet investigation into these allegations was ongoing. But Moreland specified that she filed the petition based on risk of harm to J.S. based solely on the sexual abuse allegations of C.S. At the time the petition was filed, there had been no allegations or evidence of any type of abuse or neglect by Father against J.S.

The family court found by a preponderance of the evidence that sexual abuse of C.S. had occurred. The family court entered its Adjudication Order the same day. Regarding C.S., the Order's findings of fact read "Father sexual [sic] abused daughter (Adoption)." As to J.S., the family court's initial Adjudication Order made a finding of sexual abuse as well.

Father filed a Motion to Alter, Amend, or Vacate and Motion for Specific Findings. Father asked the family court to vacate the findings of sexual abuse as to both Children. He also asked the family court to make specific factual findings that it relied upon for its finding of sexual abuse. The family court entered an order on August 7, 2024, which granted Father's motion to set aside the finding of sexual abuse as to J.S. The family court amended the order to reflect a finding of risk of harm. As to the remainder of Father's motions, they were denied.

The family court later held its Disposition Hearing on August 26, 2024, and entered its Disposition Orders the same day. Both orders contained a provision that neither child was to have contact with Father. This appeal follows.

-5-

Further facts and testimony will be discussed as they become relevant to our analysis.

## STANDARD OF REVIEW

> A family court's findings of fact in a DNA action shall not be set aside unless clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. If the family court's findings of fact were supported by substantial evidence, and it applied the correct law, its decision will not be disturbed absent an abuse of discretion. An abuse of discretion occurs when the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*M.C. v. Cabinet for Health & Fam. Servs.*, 614 S.W.3d 915, 921 (Ky. 2021) (internal quotation marks and citations omitted). A determination of dependency, neglect, and abuse shall be made based upon a preponderance of the evidence. KRS[3] 620.100(3).

## ANALYSIS

Father claims the family court erred in its findings. First, he argues there was insufficient evidence to make a finding that he sexually abused C.S. He contends there was no evidence to support a finding of risk of harm as to J.S.

---

[3] Kentucky Revised Statutes.

-6-

Finally, he makes a public policy argument that the statutory burden of proof of "Preponderance of the Evidence" in DNA cases is too low of a burden when making a finding that could result in a later termination of parental rights.

KRS 600.020 outlines what constitutes an "abused or neglected child." KRS 600.020(1)(a)5. states an "abused or neglected child means a child whose health or welfare is harmed or threatened with harm when his or her parent, guardian . . . commits or allows to be committed an act of sexual abuse, sexual exploitation, or prostitution upon the child[.]" (internal quotation marks omitted). Sexual abuse is further defined in KRS 600.020(62): "Sexual abuse includes but is not necessarily limited to any contacts or interactions in which the parent, guardian, person in a position of authority or special trust . . . uses or allows, permits, or encourages the use of the child for the purposes of the sexual stimulation of the perpetrator or another person[.]" (internal quotation marks omitted).

Father claims there was no showing that any contact he made with C.S. was "for the purpose of sexual stimulation of the perpetrator or another person." He argues that "it is not sexual for a father to massage his daughter's legs after horse riding."[4] If this had been C.S.'s only testimony, Father may have a point. But that is not the only physical contact C.S. described.

---

[4] Appellant Brief, Page 7.

C.S. testified that the touching started with Father massaging her legs after horseback riding, but later escalated to touching more intimate areas of her body. She stated this happened on many occasions, and never when anyone else was in the room. This, combined with C.S.'s testimony of statements Father made to her, is sufficient evidence to infer a sexual purpose. "Sexual gratification is a single element of the crime of sexual abuse in the first degree . . . . Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence." *Tungate v. Commonwealth*, 901 S.W.2d 41, 42 (Ky. 1995) (citing *Anastasi v. Commonwealth*, 754 S.W.2d 860, 862 (Ky. 1988)).

Father also argues the family court erred in relying on C.S.'s testimony because it was "inconsistent and unfounded." He claims there is no evidence other than C.S.'s testimony to corroborate her claims of abuse. A victim's testimony is sufficient evidence. "The testimony of even a single witness is sufficient to support a finding of guilt, even when other witnesses testified to the contrary if, after consideration of all of the evidence, the finder of fact assigns greater weight to that evidence." *Commonwealth v. Suttles*, 80 S.W.3d 424, 426 (Ky. 2002).

Father asserts the family court should have weighed other testimony more heavily than that of C.S., both because of credibility issues and because of

-8-

C.S.'s motivation to fabricate the abuse allegations. He references Trooper Salyers' testimony that it was unusual for a juvenile to use the terminology she did in an interview, thus implying that C.S. was coached or told what to say. Father also points to the timing of the allegations in comparison with the adoption and C.S.'s asking him for a ride, insinuating that C.S. wasn't really uncomfortable or afraid of Father. C.S. also admitted during cross-examination that she and Mother discussed her testimony prior to the hearing.

"It has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). "[A]n appellate court is obligated to give a great deal of deference to the trial court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *D.G.R. v. Commonwealth, Cabinet for Health & Fam. Servs.*, 364 S.W.3d 106, 113 (Ky. 2012).

Regardless of Father's claims of C.S.'s motives in making the abuse allegations, it was within the purview of the family court to believe C.S.'s testimony. The question is not whether another judge may have decided differently on the evidence, it is whether substantial evidence supports the decision of the judge whose job it was to make that decision. There was substantial evidence to support the family court's finding of sexual abuse.

Father's next contention of error is that there was no evidence to find he presented a risk of harm to J.S. We agree.

To make a finding of "risk of harm," the Cabinet must prove "more than a mere theoretical possibility, but an actual and reasonable potential for harm." *M.C. v. Cabinet for Health and Family Services*, 614 S.W.3d 915, 926 (Ky. 2021). The family court is "entitled to draw reasonable inferences from the evidence. However, the Cabinet cannot sustain its burden of proof by the compounding of inferences upon inferences." *K.H. v. Cabinet for Health & Fam. Servs.*, 358 S.W.3d 29, 32 (Ky. App. 2011) (citations omitted). A family court's finding of neglect is permitted "where a *risk of abuse* exists and *does not require actual abuse* prior to the child's removal from the home or limitation on the contact with an abusive parent." *Cabinet for Health & Fam. Servs. on behalf of C.R. v. C.B.*, 556 S.W.3d 568, 576 (Ky. 2018) (emphasis in original).

The family court relied upon the testimony of Trooper Salyers and Moreland that there was an ongoing investigation as to sexual abuse against J.S. in order to make the ruling of risk of harm. But during the hearing, Moreland was clear that *at that time* they had no evidence to present of Father being inappropriate with J.S. in any way.

-10-

In the DNA petition which was the subject of the hearing, all the allegations involved abuse against C.S., not J.S. The entirety of the petition involving J.S. is as follows:

> Child, [J.S.] did not disclose any sexual abuse or having any knowledge of anything occurring in regard to that. [J.S.] did disclose that his Mom, [Mother], and dad [Father], have verbal arguments. [J.S.] did disclose that his dad was mean to his sister but was not able to tell SSW how his dad was mean. He stated "I don't really know." [J.S.] did report to his parents arguing and yelling at each other.

The family court may not rely on testimony of a new investigation when it was not referenced in the petition. *See C.L. v. Cabinet for Health & Fam. Servs.*, 653 S.W.3d 599, 611 (Ky. App. 2022). KRS 620.100(3) states "the adjudication shall determine the truth or falsity of the allegations *in the complaint* . . . ." (emphasis added). There were no allegations that J.S. was at risk of harm, or that he was even aware that his father was alleged to have abused his sister. Moreland was clear in her testimony that if one child is alleged to be abused, she automatically files a petition based on risk of harm for any other children in the home. Without more, this is not enough to sustain a finding of risk of harm.

"We must also be mindful that an adjudication of neglect carries long-reaching consequences. This finding may be used against [a parent] in subsequent proceedings, including proceedings to remove the children from the home or to terminate her parental rights. A finding of neglect may also carry a personal or

-11-

social stigma far beyond the limited circumstances involved in this case. Thus, the courts should be very careful about making such a finding merely out of caution." *K.H.*, *supra*, at 31.

Obviously, the Cabinet has a duty to investigate any allegations of abuse against a child. And in this instance, the Cabinet did just that. They opened a new investigation into the allegations regarding J.S. But there is no evidence of substantiation or of any new petition having been filed. If any evidence of abuse had surfaced, then the Cabinet was free to file a new petition, and the family court could have heard that evidence at that time. Indeed, the Cabinet is still free to file a petition if there is any evidence of sexual abuse or risk of harm to J.S.

The mere presence in the home of a younger, biological male child of the Father does not mean that this child is at risk of sexual abuse simply due to allegations of sexual abuse against an older, adopted female child, with nothing more than residing in the same home. This is simply an impermissible assumption of a risk of harm. While we appreciate the Cabinet's and family court's goal of protecting children, in this instance, there was not sufficient evidence to sustain the finding of risk of harm to J.S., which also had not been alleged in the petition.

Father's final argument is one of public policy. He is essentially challenging the constitutionality of KRS 620.100(3), in which the burden of proof to establish dependency, neglect, or abuse "shall be made by a preponderance of

the evidence." He argues this is too low of a burden to make a finding that could later be used to permanently sever a parent-child relationship via a termination of parental rights action.

This argument is unpreserved, as it was never made to the family court. "An appellate court is without authority to review issues not raised in or decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (internal quotation marks and citations omitted). Furthermore, Father failed to follow the mandate in KRS 418.075, in which the Attorney General shall be notified of a challenge to the constitutionality of a statute. Our state's highest court has held "strict compliance with the notification provisions of KRS 418.075 is mandatory." *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008). We therefore decline to address this challenge.

**CONCLUSION**

Because the family court did have not have substantial evidence to support the finding of risk of harm to J.S., we reverse said finding on Appeal Number 2024-CA-1185-ME and direct dismissal of that petition as to J.S. without prejudice to other proceedings. The finding of sexual abuse on Appeal Number 2024-CA-1199-ME is not clearly erroneous, and we therefore affirm the Greenup Family Court as to that appeal.

-13-

ALL CONCUR.

BRIEF FOR APPELLANT:

Marie E. Troxler
Russell, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY:

Madison Mantz Imel
Assistant Greenup County Attorney
Greenup, Kentucky