RENDERED: JUNE 18, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0969-ME

T.D.[1]                                                                              APPELLANT

v.         APPEAL FROM FRANKLIN FAMILY COURT
           HONORABLE SQUIRE WILLIAMS, III, JUDGE
           ACTION NO. 19-J-00247-002

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; H.F.; AND J.D.,
A MINOR CHILD                                                            APPELLEES

AND

NO. 2025-CA-0970-ME

T.D.                                                                                  APPELLANT

v.         APPEAL FROM FRANKLIN FAMILY COURT
           HONORABLE SQUIRE WILLIAMS, III, JUDGE
           ACTION NO. 13-J-00271-003

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND

---

[1] Pursuant to Court of Appeals Administrative Order No. 2006-10, to protect the privacy of minors we refer to parties in dependency, neglect, and abuse cases by initials only.

FAMILY SERVICES; S.C.; AND B.D.,
A MINOR CHILD                                                          APPELLEES

AND

NO. 2025-CA-0972-ME

T.D.                                                                         APPELLANT

                              APPEAL FROM FRANKLIN FAMILY COURT
v.                        HONORABLE SQUIRE WILLIAMS, III, JUDGE
                              ACTION NO. 13-J-00272-002

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; S.C.; AND
L.A.D., A MINOR CHILD                                                 APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

McNEILL, JUDGE:  T.D. (hereinafter "Father") appeals from the Franklin Family

Court's judgment adjudicating his three minor children as neglected or abused.

After careful review of the briefs, record, and law, we affirm the family court's

judgments and, by separate order, grant Father's appointed counsel's motion to

withdraw.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Father has three children. His daughters, B.D. and L.A.D., who are seventeen and thirteen years old, respectively, alternated residing with him and their mother, S.C., on an equal basis. His son, J.D., six years old, lived exclusively with Father.

On February 14, 2025, the Cabinet for Health and Family Services (hereinafter "the Cabinet") filed dependency, neglect, and abuse ("DNA") petitions regarding the children and requested that it be granted emergency custody of the son and that the daughters be placed in their mother's custody. In the petitions, the Cabinet alleged that the children were at risk of physical or emotional injury and that Father had failed to adequately care for their wellbeing. In support, the Cabinet cited Father's history[2] of assault fourth degree domestic violence charges (the first in 2019 for dating violence against his son's mother and the second for child abuse against B.D. in December 2023); his unwillingness to communicate with the Cabinet; and his failure to work the case plan developed in response to the child abuse charge and adopted by the family court in the prior DNA actions in November 2024.

The family court granted emergency custody as requested by orders entered February 14, 2025, and held an adjudication hearing on May 9, 2025. At

---

[2] We have omitted references to other alleged charges, because no proof was offered in support.

the hearing, the family court heard testimony from the social worker assigned to the family, a psychiatric nurse practitioner who had evaluated the daughters, and Father.

The testimony established that the Cabinet became involved with the family in December 2023 after Father physically disciplined his eldest daughter and caused bruising. Father was charged with assault fourth degree, child abuse, and DNA non-removal petitions were filed regarding both of his daughters, but not his son.[3] Franklin Family Court Action Nos. 13-J-00271-002 and 13-J-00272-002.[4] In March 2024, the family court adjudicated that Father had neglected or abused his daughters, although he was subsequently found not guilty of the criminal charge.

The Cabinet developed a case plan for Father that included the following tasks: have a mental health assessment and comply with all recommendations, cooperate with monthly home visits by the Cabinet, cooperate with services, and enroll and complete anger management and domestic violence classes. Father admitted that he had received the case plan in April 2024 and that

---

[3] Repeated references were made indicating that the son was included in this prior action; however, this Court can determine from the case numbers that he was not.

[4] The family court sustained the Commonwealth's motion to take judicial notice of these records, but they were not included on appeal. We have elected not to supplement the record because, despite its ruling, the family court further stated that the records were unavailable due to flooding and it then ruled from the bench, demonstrating that the omitted portion of the record was not considered.

the case plan was adopted by the family court in its November 2024 dispositional orders. He further admitted that, prior to the underlying petition being filed in February 2025, he had made no progress on his assigned tasks.

The social worker testified that she was concerned about the daughters' emotional health based on their monthly meetings. She recounted the daughters' statements that their visits at Father's house felt longer than they truly were, that they were made to take on a mothering role for their younger brother during visits (getting him up and dressed for school), that they could not just be children while at Father's, and that the visits caused them stress. She asserted that the daughters were very vocal about the emotional toll that every single visit had on them. The social worker also recounted that Father had told his youngest daughter that she would be the next child in court after he received a belt for Christmas, implying he would corporally punish or abuse her. Father asserted that his comment was made in jest after the child "smart mouthed" him.

The psychiatric nurse practitioner testified that she evaluated the daughters' mental health in March 2025 and had diagnosed them each with having an adjustment disorder with anxiety related to their relationships with Father. The psychiatric nurse practitioner acknowledged that, although she was board certified, she had only six months of experience in the psychiatric field.

As for the son, the social worker asserted that the DNA petition had been filed because, prior to the underlying action, she had been unable to meet with him or see Father's home to assess the son's safety. The social worker did concede that the son attended school, that she could have talked to him there, and that she did so on one occasion during her history with the family.

Father admitted that he had been charged criminally for his corporal punishment of his eldest daughter but asserted that the jury had promptly acquitted him. He conceded that he was convicted of assault fourth degree against his son's mother in 2019 and that he was required to take anger management classes as part of the dissolution action with his daughters' mother. He denied that his daughters were anxious in his home and maintained that his actions with his children were justified and that he did not need to cooperate with the Cabinet.

After the close of proof, the family court ruled from the bench, determining that the children were abused or neglected. The adjudication orders were then entered on May 12, 2025. Therein, the family court found that Father had refused to work his case plan and determined that the children were therefore neglected or abused, as defined by Kentucky Revised Statutes ("KRS") 600.020(1)(a)2. and 9., because Father had created a risk of physical or emotional injury by other than accidental means and had failed to make sufficient progress towards identified goals in the court-approved case plan.

The family court held a disposition hearing on June 27, 2025.  By orders entered July 2, 2025, the family court again found that Father had failed to cooperate with the Cabinet and granted custody of his daughters to their mother, closing their DNA cases, and continued temporary custody of his son with the Cabinet.  Father, through his appointed counsel, timely appealed.  Thereafter, in accordance with *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012), Father's counsel filed an *Anders*[5] brief, attesting that no meritorious issues exist to present to this Court, as well as a motion to withdraw as counsel on appeal.  Father was afforded an opportunity to file a *pro se* brief, but he declined.

## STANDARD OF REVIEW

A determination of neglect or abuse must be made by a preponderance of the evidence, and the complainant bears the burden of proof.  KRS 620.100(3).  The family court's findings of fact shall not be set aside unless clearly erroneous, *i.e.*, unsupported by substantial evidence.  Kentucky Rules of Civil Procedure ("CR") 52.01; *D.G.R. v. Commonwealth, Cabinet for Health & Family Servs.*, 364 S.W.3d 106, 113 (Ky. 2012).  "If the family court's findings of fact were supported by substantial evidence, and it applied the correct law, its decision will not be disturbed absent an abuse of discretion.  An abuse of discretion occurs when the

---

[5] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

-7-

family court's decision is unreasonable or unfair." *M.C. v. Cabinet for Health & Family Servs.*, 614 S.W.3d 915, 921 (Ky. 2021) (internal quotation marks and citations omitted). Finally, because appointed counsel filed an *Anders* brief, the Court is required to "independently review the record and ascertain whether the appeal[s are], in fact, void of nonfrivolous grounds for reversal." *A.C.*, 362 S.W.3d at 372.

## ANALYSIS

As stated above, the family court determined that the children were abused or neglected pursuant to KRS 600.020(1)(a) subsections 2. and 9. The latter of these provides that a child may be deemed abused or neglect if his or her parent "[f]ails to make sufficient progress toward identified goals as set forth in the court-approved case plan *to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining in foster care for fifteen (15) cumulative months out of forty-eight (48) months*[.]" KRS 600.020(1)(a)9. (emphasis added). The family court modified this provision by striking through the italicized language on the adjudication form order. Courts, however, are not at liberty to subtract from statutory language and must instead give effect to the law as written. *Johnson v. Branch Banking & Trust Co.*, 313 S.W.3d 557, 559-60 (Ky. 2010). Accordingly, the family court's finding under KRS 600.020(1)(a)9. is clear error.

-8-

We turn to the family court's alternative finding pursuant to KRS 600.020(1)(a)2. that the children were abused or neglected because Father "[c]reate[d] or allow[ed] to be created a risk of physical or emotional injury as defined in this section to the child[ren] by other than accidental means[.]" A "[p]hysical injury" is "substantial physical pain or any impairment of physical condition[.]" KRS 600.020(49). An "[e]motional injury" is

> an injury to the mental or psychological capacity or emotional stability of a child as evidenced by a substantial and observable impairment in the child's ability to function within a normal range of performance and behavior with due regard to his or her age, development, culture, and environment as testified to by a qualified mental health professional[.]

KRS 600.020(26). A finding under KRS 600.020(1)(a)2. expressly does not require actual abuse to have occurred prior to the family court's intervention. *M.C.*, 614 S.W.3d at 923. "However, 'the risk of harm must be more than a mere theoretical possibility,' it must be 'an actual and reasonable potential for harm.'" *Id.* (quoting *K.H. v. Cabinet for Health & Family Servs.*, 358 S.W.3d 29, 32 (Ky. App. 2011)).

Much of the Cabinet's proof focused on the emotional wellbeing of the daughters, and the Cabinet presented expert testimony about their mental health in support of its position. However, it does not appear to this Court that the psychiatric nurse practitioner was a "qualified mental health professional" as

-9-

defined by KRS 600.020(52), because there is no evidence that she had the requisite minimum of two years' of experience. As for the son, the Cabinet provided no evidence whatsoever to support a finding that he was at risk of an emotional injury.

Accordingly, the sole inquiry is whether there was sufficient proof that the children were at risk of a physical injury. The evidence was that Father had previously been convicted of domestic violence against his son's mother and was required to take anger management classes as part of his divorce from his daughters' mother, in the past year his daughters were adjudged abused or neglected as a result of his corporal punishment of his eldest daughter, he wholly failed to comply with a court ordered case plan to address those safety concerns, and he has since threatened to use a belt on his youngest daughter saying that she could be the next child in court. Given this history, Father's demonstrated casual disregard for not only continuing to use corporal punishment but also his jesting or threatening to abuse the children rises above a theoretical risk of harm. For this reason, we affirm the family court's finding that the children were abused or neglected because Father created a risk a physical injury.

## CONCLUSION

For the foregoing reasons, the orders of the Franklin Family Court are AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:            NO BRIEF FOR APPELLEE.

W. Steven Middleton
Frankfort, Kentucky